Gregory Berry, excuse me, I'm sorry, 12-2402 Gregory Berry v. Gary Capello, oral argument not to exceed 15 minutes per side. Ms. Sutton for the petitioner appellant. Good morning, Laura Kathleen Sutton for petitioner appellant Gregory Lee Berry, and I would like to reserve three minutes for rebuttal time. Now the overall perception of Gregory Lee Berry, a stolen car at 4 a.m. looking for people to rob in order to obtain money for drugs, is not a positive one. However, Gregory Lee Berry did not kill Octavio Hernandez at the mobile gas station on Spring Wells in southwest Detroit on September 5th, 2003, did not intend his death, and his trial for aiding and abetting felony murder was fraught with violations of Mr. Berry's constitutional rights, several of which are egregious enough to mandate habeas relief and at minimum a new trial. Now a certificate of appealability was granted as to all eight claims raised by Mr. Berry and his petition for writ of habeas corpus in the district court. I will not be addressing all claims this morning. For the claims that I do not address, I rely on the briefs submitted. The major constitutional violations I'm going to address this morning are four. The first is the admission of witness Kathy Carthren's hearsay within hearsay statements that she overheard Chiquita Mack telling her mother about a conversation Mack overheard between Berry and his co-defendant Antoine Hamilton regarding the shooting at the mobile station. The second is Judge Jackson's instruction on aiding and abetting that stated that the jury could infer that the defendant aided and abetted the killings by participating in the underlying offense. The third is Judge Jackson's sentencing Mr. Berry for both felony murder and the predicate offense of assault with intent to rob while armed, in contravention of the existing case law precedent at the time of the sentencing. Would that one require a new trial? That would not necessarily require a new trial. We're simply asking that the predicate felony be vacated in accordance with Michigan law. And the last, overlaying the other two constitutional claims, was the violation of Mr. Berry's Sixth Amendment right to the effective assistance of counsel at trial, sentencing and on direct appeal. Now, we assert that the admission of Kathy Carthren's testimony was not harmless error. The United States Supreme Court decision in Crawford versus Washington had been released prior to Mr. Berry's trial. Carthren's testimony was clearly testimonial as it was given to law enforcement officials during the course of a homicide investigation. The error in the admission of Carthren's testimony does not lie, as the Attorney General would have you believe, with the source of the alleged statements as it's well known that defendant statements are party admissions. However, Carthren does not relate what defendant Berry allegedly told co-defendant Hamilton, but relates to Shaquita Mack's recounting of a conversation she allegedly overheard between the two young men. Now, the importance of Carthren's testimony to the state's case against Mr. Berry is undeniable. Although Mack and Hamilton testified at Mr. Berry's trial, it was only Carthren's version of the alleged conversation between Berry and Hamilton that provided the necessary link between Mr. Berry and Principal Antwon Hamilton to support the aiding and abetting conviction. Stated otherwise, either the testimony of Kathy Carthren was credible and Gee had told Hamilton to shoot the victim, which would lead a reasonable jury to find felony murder, or the testimony of Mack and Hamilton was credible and Gee had no idea that the robbery was going to evolve into murder. Well, was everyone involved available for, that is other than Berry himself, available for cross-examination? That is, I understood everybody testified. Yes, they did, and they were cross-examined, and I will get to some of that as I get into my counsel arguments later, but there is no question that Carthren's testimony was hearsay and that its omission was erroneous. Those facts were admitted by the state prosecutor and the Michigan Court of Appeals. Now, it's our contention that the Michigan Court of Appeals unreasonably applied federal case law precedent to the facts of this case. They ignored the obvious constitutional violation, they didn't address the Sixth Amendment claim, and they placed themselves in the position of jurors by viewing the testimony, and their language here is interesting. They said the testimony was inconsistent and therefore harmless. The testimony was conflicting. Carthren's testimony conflicted with that of Mack and Hamilton, and we believe that their determination of harmlessness in this regard was erroneous. There was a Sixth Amendment violation here. The aiding and abetting instruction that allowed the jury to be viewed by participating in the underlying felony. Now, we assert that that instruction was clearly erroneous, and we are well aware that jury instructions are to be viewed in their entirety, and that the instructions on felony murder reference the three requisite dates of mine that are necessary in Michigan for the finding of second-degree murder, and that secondary murder is elevated to first-degree murder by participating in enumerated felony. However, this trial was all about Mr. Berry's role as an alleged aider and abetter to a felony murder in a botched robbery attempt. Aiding and abetting was not an alternative theory of guilt in this case. It was the only theory of guilt, and the court's instruction on aiding and betting was key. It was the central instruction, because this is what they were there to decide, aiding and abetting. To allow, even by inference that's couched in an aiding and abetting instruction, the outlawed felony murder doctrine into this 2004 prosecution for felony murder stands in violation not only of Michigan precedent, but also federal guarantees of due process of law. In addition, the jury in this case was granted permission to make this erroneous inference. It was not told that they need not do so, and I reference the court here to Michigan Rule of Evidence 302B. Now, this court has a duty to grant habeas relief when a constitutional violation has a substantial and injurious effect upon the jury's verdict, citing Brecht v. Abramson. The instruction here had a significant impact on the jury's finding of guilt. The error allowed the jury to convict Mr. Berry of felony murder based on the basis of his participation in the underlying felony alone. Michigan does not so define felony murder, and this court cannot say with certainty that the verdict in this case was not based upon such an erroneous definition. When you say Michigan doesn't define it so, doesn't that make this only an error of state law? Good question, your honor. It is in violation of Michigan's precedent in People v. Aaron, which abrogated the felony murder rule in Michigan, but I believe it's also in federal due process grantees. And we cited in our brief the federal case of Edmund v. Florida, which is a 1982 death penalty case, wherein Justice White, not a blooming liberal he, said that you cannot convict based on the underlying felony alone. That was a capital case, but this case is also a capital case in terms of Michigan law, and you cannot convict a defendant on the basis of... No, we do not have a death penalty in Michigan, but this is the highest penalty that can be imposed, life without parole, and it's a mandatory sentence. Now, the court has correctly surmised that sentencing on both felony murder and predicate felony may or may not rise to the level of a constitutional violation. However, at the time of Mr. Berry's sentencing in 2004, and at the time of the offense in 2003, Michigan case law held that convictions for both felony murder and the predicate felony offended both federal and state protections against double jeopardy. On this one, even if you succeed and you remove the underlying felony, how does that help him? He's sentenced to life without parole on the felony murder. Anytime you can relieve a defendant of a felony conviction, whether it's the predicate felony or the capital felony, it is providing assistance to counsel. The fact that it doesn't matter whether Mr. Berry has five convictions or one conviction, he is still doing life in prison, that is true, but he should not be doing the predicate felony. I just want to be sure I understood that. Okay. Does it have collateral consequences of some kind? There could be. There could be. I'm not going to say, I'm not going to speculate on, but there are... Well, I understand. Are there I'm not sure. There could be, but I'm not going to say that there are to this panel. In this case, if he doesn't get out of prison and he's not going to be voting or, you know, having a barbering license. But there was an error that there was, this is a double jeopardy violation as understood in Michigan and in federal case, at the time, and it should have been corrected. Can you bring that through the claim of ineffective assistance? Yes, I do. I do because... Abandon the process. Right, exactly. Correct. Right, I do do that. And I'm going to move on to ineffective assistance of trial and appellate counsels, and I'm going to confine my statements this morning just to the interplay between retained trial counsel and appointed standby counsel and the requirements of the Sixth Amendment guarantee of effective representation. Now, this case presents the extraordinary situation of retained counsel under the cloud of a felony indictment for cocaine possession and court-appointed standby counsel assigned the task of preventing, in the trial court's words, an appellate parachute for Mr. Berry. Now, as trial progressed, retained counsel's condition deteriorated. He fell asleep during jury instructions and even absented himself from the courtroom during the prosecutor's rebuttal arguments. The Michigan Court of Appeals rejected Mr. Berry's claim of ineffective assistance of counsel by holding that the second court-appointed attorney was in the courtroom at all times and provided effective assistance. Now, this slate of hand by the Michigan Court of Appeals is an oversimplification of the courtroom situation, and we argue that it does not pass constitutional muster. The second appointed attorney viewed his role as limited to instances where he had permission of retained counsel to take action or if Attorney Callahan simply did not appear in court for trial, and he was not heard at sentencing. Now, the sixth... He stated what? He stated that this was how he perceived his role. Was he asked specifically that... Well, he made a motion... You would not object if you didn't have permission to object or something? He felt that it wasn't his role, that he should defer to retained counsel at all times. How do you know exactly that you say he... that was prejudicial here? Well, the Sixth was a warm-bodied, law-agreed person in a suit sitting alongside counsel. What did he do that affected the case prejudicially? Okay, he did... All he did was wake up... try to wake up counsel during jury instructions. He failed to object to the erroneous instruction on aiding and abetting, which was the only theory of liability in the trial, and he stood by at sentencing and allowed Mr. Berry to be sentenced to both the felony murder and the predicate felony in contravention of Michigan law. But none of those have to do with his... with Kallinen's being out of the courtroom. I thought we were talking about the Kallinen out of the courtroom part. He did object to the prosecutor's reference to Mr. Berry not testifying, but only after Judge Jackson jumped in with both feet when he heard that remark. He wanted to stop it, and then counsel said, I object. But that is how that particular situation came down. I see I'm out of time. Do either of my colleagues have further questions? Okay, thank you counsel. You'll have your time for rebuttal. Good morning, Your Honors. Matthew Nelson on behalf of Warden Capello. May it be so. A few years ago, Judge Kethledge started an opinion from this court. When a party comes to us with nine grounds for reversing the district court, that usually means there are none. I would submit that in this case, the eight grounds are no different, especially when viewed in the light that not only is there deference accorded... Wasn't that partly because a judge of this court granted the COA on all issues, where the lower court would only have granted it on one? Well, the lower court here denied the certificate of appealability as to all claims. Oh, you're right. He would have denied them on all, but in a sense, we threw them all in. Yes, Your Honor. Which means we will look at all of them. And I... If there are 10 or if there are 50, right? I understand that this court will look at all of them. I would submit, however, that the fact that there are so many disparate claims of error here suggests that none of the claims of error... Why don't you, at least for this judge, why don't you focus, at least initially, or take your choice on the hearsay and the harmless error standard? Because I actually had meant to ask, what's the clearly established law on harmless... So you've got two things. Number one, was there a violation? Number two, what's the harmless error standard? So, at least for me, I would like you to address that. Certainly, Your Honor. With regard to the hearsay or the confrontation clause challenge here, first of all, there's two reasons that the state court's ruling is reasonable. The first of which is that Ms. Carthron's testimony here is not testimonial. And the focus placed on this by the petitioner is incorrect. The petitioner focuses on Ms. Carthron and her statements as to whether her statements to police are testimonial. There's no question that her statements to police before trial were testimonial. But she wasn't reciting her statements to police as the hearsay that was the issue at trial. The hearsay that's being complained about is her recollection of the statements between Ms. Shaquitum, I believe her last name is Marks, and to her mother that Ms. Carthron overheard. Those statements were not testimonial. They were not made in any context where anyone would expect them to be used in any sort of proceeding against the petitioner here. Consequently, the confrontation clause jurisprudence from the Supreme Court does not apply. So, Carthron's statements were in court testimony. Correct. Now, she had said something similar to police earlier because she called the police. Correct. Were those statements in any way recorded and brought in to buttress her own testimony? Not to my understanding, Your Honor. The statements here was her testimony regarding the conversation that she overheard. The confrontation clause challenge has to be to those statements that she overheard. Those were not testimonial. In Washington v. Davis, the Supreme Court has said that the confrontation clause does not apply to non-testimonial statements, and consequently there is no clearly established federal precedent for the state court to have violated by bringing these claims in. Didn't the state on Barry's direct appeal concede that admission of Carthron's statements was error? It conceded that it was evidentiary error under the Michigan court rules. It did not concede that it was constitutional error for due process purposes. And there's a statement in the reply brief that suggests otherwise. You can see, if you read the Michigan Court of Appeals opinion, it doesn't specifically address what type of error is being addressed. But if you look at the two cases it cites immediately after that, People v. Likitty and People v. McLaughlin, both of those cases deal with Michigan evidentiary rulings and evidentiary error. And, in fact, People v. Likitty, the Michigan Supreme Court case that's cited, specifically states that it is dealing with harmless error in the context of an evidentiary ruling and not constitutional harmless error analysis. So clearly what was being addressed in the Michigan Court of Appeals decision and also in the briefing by the prosecutor on direct appeal was the evidentiary issue, not the constitutional issue. Secondly, with regard to prejudice, the issue here of prejudice, even if there was a constitutional error, and we submit there was not, here there was no prejudice because the testimony that Ms. Carthron gave was cumulative with other evidence that was sufficient for the jury to conclude that the petitioner aided and abetted in this felony murder. Specifically, and this is the crux of the prosecution's case, it's undisputed that Mr. Berry gave Mr. Hamilton the handgun and encouraged him to go rob Mr. Hernandez. From that, the jury could conclude that Mr. Berry participated in an action and willfully and wantonly created a situation where death or great bodily injury to Mr. Hernandez was likely to occur. And, in fact, the Michigan Supreme Court has said that when you aid and abet somebody in the course of an assault and the assault leads to murder, that's reasonably foreseeable. That shouldn't come as a surprise to any reasonable person, that when you give someone a gun and encourage them to go assault someone, it can lead to murder. And that's exactly what happened here. But with regard to the correct standard, we're only at this point if we have constitutional error. Correct. But if we have constitutional error, then what is the standard? Is it Brecht or what's your view of what it is? Your Honor, you're catching me at a bit of a loss. Brecht v. Abramson. Right. My main concern, really, is that the way you couched it and the way, to some extent, the Michigan court couched it was, was there sufficient other evidence without hers? I don't think that's the standard because there could be other sufficient evidence, but yet the improper evidence was so damaging that it would overcome sufficient evidence by creating reasonable doubt. I mean, there are several different standards. I'm going to ask your colleague the same thing. So what do you think was the law that they did correctly apply, or at least not unreasonably apply? Well, Your Honor, first of all, with regard to the, it's not clear to me that the constitutional issue was raised with the Michigan Court of Appeals. But further, if one was to apply the Brecht standard, the, there is not, there is no suggestion that it had a substantial and injurious effect on the jury here for the very reasons stated. But moreover. So you would say substantial and injurious effect, okay. Is that. Which is, I believe, the Brecht standard. Okay. Less or worse than sufficient to undermine confidence. Is that pretty much the same as sufficient to undermine confidence? Your Honor, I would have to. Okay. Go ahead. Unfortunately, you've caught the situation with a civil appellate litigator. Okay. Go ahead. Go ahead. But further, in terms of looking at it, not only is the court then required to consider the prejudice in light of the Brecht standard, but also apply the edpedeference then due to the court in terms of the determination that this, in fact, is not a, did not affect the result here. And consequently, when you apply the double level of deference that's due here to the lower court's determination, the state court's determination, there's no grounds for granting the petition. Could you tell me what is the effect of, assuming there was a constitutional error on double jeopardy just for the moment, what was the effect of having both convictions? Was there an additional sentence? What really is the effect of that? Your Honor, the sentences that were imposed were concurrent. So the sentence for the felony murder is life and the sentence for the underlying felony was 15 to 20, I believe, to run concurrently. So in terms of even if that decision was vacated, it wouldn't have an effect on when the petitioner is going to be released because he's not going to be released. Do we have a parole system there or not that would be, would it, Your Honor, I do not. Who decides when they get out? There is a parole system, my understanding, and counsel can correct me if I'm wrong, is that life means life. But the sentence is not just life, it's life without parole. That's the way it's stated. So isn't the question whether the dual conviction has an impact on the conditions of his imprisonment, whether there are... Yes, Your Honor, and I do not believe there are any collateral effects of the... You don't know, I'm sorry, you don't know whether there are or you are saying that there are not. I am not aware of any. Obviously the most normal situation is where there's some opportunity for parole and it would affect that. In that case, this court has, in fact, addressed the issue. But you would concede, wouldn't you, that that was ineffective assistance to fail to raise in 2002 and, no, 2003 and 2004, the wilder rules for double jeopardy. Your Honor, it may have been ineffective assistance at the time. It is not ineffective assistance now that would permit... But we judge. We judge whether assistance was ineffective at the time it occurred, correct? Your Honor, you do judge the state of the law at the time that the trial occurred when considering whether a subsequent change in the law that's more favorable to the petitioner applies. That, I believe, is the Teague decision. But, Your Honor, I would submit and would cite to this court's decision in... to say versus Booker to indicate that where the subsequent change of the law is more favorable to the state, such that although the prisoner may have had an argument in the past that they were being held unconstitutionally, there is no current holding of the prisoner in violation of the Constitution, that habeas relief cannot be granted. Let me understand this argument. So, I can have an attorney represent me who blows it, who had an absolute right. I had a claim that was governed by the law clearly in effect at that time, and my counsel didn't raise it. And when I subsequently reach appeal, the law has changed. And you think that the rule is because ten years later I would have been right, it's just too bad for the guy whose counsel was wrong when he did it? Your Honor, I would say that's the answer that the Supreme Court gave in the Lockhart decision and that this court ruled on in Desai versus Booker. That, in fact, in the citation for the Desai case is 538 F. 3rd 424, 2008 decision from Judge Sutton. And the reasoning for that is that the reason in Teague the government gets the benefit of the rule that's in effect at the time is that it is difficult, if not impossible, to say that the trial court unreasonably applied the law at the time when it didn't foresee a change in the future. Here you have a situation where the trial court, frankly, got the law right, but inconsistent with the then incorrect law from the Michigan Court of Appeals and the Michigan Supreme Court. It was prematurely right. It was untimely right. But, Your Honor, perhaps there's an easier way around this problem. I would hope so. Also, yeah, what about Rabideau? Well, the remedy, the remedy according to the Michigan Court. I didn't say remedy, I said Rabideau. Oh, Rabideau. Well, Rabideau was, Rabideau and Wheeler were both subsequently overruled. But if you go back to Wheeler and you look at the Michigan Supreme Court's discussion of Wheeler and Ream, you find that the reason that the double jeopardy. Sorry, when you said Wheeler, did you mean Wilder? Wilder, I'm sorry. Yes, Wilder. There's so many of these cases, but I didn't know there was a Wheeler. Okay. I apologize, Your Honor. If you look back to those cases, you find that the reason that the Michigan courts held that double jeopardy did not permit a conviction for both the underlying felony and for felony murder was because the Michigan Constitution double jeopardy clause created a higher standard than the Blockberger standard adopted by the U.S. Supreme Court in the, I believe, 1920s. Or 1930s, excuse me. So consequently, the issue in Michigan was that the Michigan law imposed this higher standard. When the Michigan courts reverted to the federal standard for interpreting the Michigan Due Process Clause in the Michigan Constitution, it concluded that the Michigan legislature intended two punishments, and consequently the punishments at issue here and in those cases didn't violate the federal double jeopardy clause of the United States Constitution. Consequently, when you're looking at the constitutional error here in this court's role in habeas, this court, of course, has no role in enforcing Michigan constitutional law. It can only grant habeas relief where the prisoner is being held in violation of the United States Constitution. And the Michigan Supreme Court's interpretation of its own law has been that applying the federal standard, there was no violation of double jeopardy. General ex post facto claim in this case. When the law went from more favorable to less favorable, there is no ex post facto claim to be decided about that. There is not. It has not been raised here, Your Honor. I believe that. That's all I need to know. Okay. Any other questions from my colleagues? Your time has expired, counsel. Okay, thank you. Thank you, Your Honor. You might touch on some point on the proper harmless error standard that they should have applied in your view. We believe that the standard, particularly with the testimony of Kathy Carthren, should be the BRAC standard, and we definitely believe that the error was substantial and had a harmful effect. Kathy Carthren's testimony. What was the prejudice? Pardon? What is the prejudice here? The prejudice is this. Life without parole versus a term of years, 15, 20 years. What is the prejudice? You're going to still have the life without parole. Right. Well, in terms of whether Mr. Berry would be convicted or not of felony murder, if he were to be convicted only of his participation in the assault with intent to rob, that does carry in Michigan up to life, but that is a parolable sentence. Don't we have to find some prejudice? Just because you have a claimed technical error in this double jeopardy problem, don't we have to find some? The prejudice in the admission of Carthren's testimony is it's the only testimony, and her response to the prosecutor's question is, all I know is Skittles, that's Hamilton's street name, shot the guy in the head, and the white guy told him to do so. There is no other testimony on this record that says Gregory Berry told Antoine Hamilton to shoot anybody. And the prosecutor relied on Carthren extensively in his closing. What has that got to do with this problem of prejudice on double jeopardy? Oh, I'm sorry. I was talking about the confrontation. I'm sorry, we're talking about different things. Didn't I ask you about double jeopardy problems? I'm sorry. I'm going off on where I'm going. I apologize. And in terms of double jeopardy, there may be collateral consequences in terms of a commutation request if someone is serving more than the number of sentences and so forth, but in our response to the double jeopardy claim is that the people have relied on a Michigan case in their brief, People v. Reams, saying the state of the law is this and now, and therefore, Mr. Berry has to live with it. It wasn't the state of the law then, and as this panel is well aware, a petitioner cannot rely on new law to substantiate claim, not necessarily unless it's retroactive, cannot rely on new law, and they can't do the same thing. I mean, the law, Michigan double jeopardy standard said that it violated both at the time of sentencing, counsel stood by and didn't do anything about it. And I apologize for my misunderstanding you and my going off on confrontation. That is very important here because it is. We've got to find some prejudice here. I mean, it can't just be an abstract rule that has no grounding. The district court found that it didn't violate double jeopardy and that the state law was correct, the present state law was correctly applied. We don't believe that is true. This court granted a certificate of appealability, and we believe, we are very troubled, and we believe that the trial court, all the Michigan courts, should have applied the law at the time. How do you respond to your opposing counsel's argument that it was based on the state, which it was, the Michigan state constitution, as opposed to a federal right, and that at this level we're not enforcing the state interpretation of its own constitution, that on habeas we are looking only to the federal constitutional rights? We're saying that it was a clear error of law, and at the time, the Michigan courts were interpreting their double jeopardy analysis in light of federal double jeopardy analysis, and it should have been vacated. There's reams and reams of cases where it should have been done, and our primary argument here is that counsel stood by and let it happen, and that was prejudicial to his client. Any other questions, judges? Thank you. The case will be submitted.